**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ALEXIS C.,**

           **Plaintiff,**

    **v.**                         **Civil Action 2:22-cv-2518
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

           **Defendant.**

<u>**OPINION AND ORDER**</u>

Plaintiff, Alexis C., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff filed her application for DIB on January 27, 2020, alleging disability beginning December 10, 2019. (R. at 178–79). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on May 12, 2021. (R. at 34–71). The ALJ denied benefits in a written decision on June 8, 2021. (R. at 12–33). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 17, 2022 (Doc. 1), and the Commissioner filed the administrative record on August 18, 2022 (Doc. 8). The matter has been briefed and is ripe for consideration. (Docs. 9, 10, 11).

### A. Relevant Hearing Testimony

The ALJ summarized the reports presented to the administration and testimony from Plaintiff's hearing:

> [Plaintiff] alleges disability due to gastroparesis, irritable bowel syndrome, and bile reflux (Exhibit 4E). She completed a Function Report wherein she reported difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, remembering, completing tasks, concentrating, understanding, and following instructions (Exhibit 2E).
>
> At the hearing, [Plaintiff] testified that she is single with no children. She stated that she lives with her mother, father, and brother. She stated that she has a driver's license, but that she does not drive very often. She endorsed a high school education and stated that she received a Bachelor's degree in 2020.
>
> When questioned about her gastrointestinal symptoms, [Plaintiff] testified that she gets nauseous, with pain, weakness, fatigue, constipation, diarrhea, and vomiting. She stated that her nausea occurs daily, with some days being worse than others. She stated that she has days when her stomach can empty just fine, but other than it feels like her food gets stuck. She stated that she cannot identify any specific trigger and that she tries not to eat things with too much fiber. She stated that 2-3 day out of the week, her stomach does not empty. She stated that she cannot exercise like she used to do, but that she does do some household chores. Cooking is exhausting to her. Due to her condition, she stated that she is limited to walking 5-10 minutes at a time. She described her abdominal pain as under her ribs, sharp and uncomfortable.
>
> [Plaintiff] also endorsed bulging discs in her back and a bad left hip. She stated that she has back pain radiating through her tailbone, which has worsened since her hip surgery. She endorsed back pain daily. She stated that her hip has been better after her surgery, but that she still cannot squat or lift anything too heavy. She rated her typical pain as 6-7/10 and stated that it is worse with lifting anything heavy or moving in general. She also endorsed migraines occurring 4-5 times a month.

(R. at 22–23).

### B. Relevant Medical Evidence:

The ALJ summarized the medical records as to Plaintiff's gastrointestinal symptoms:

> … [Plaintiff] has had longstanding gastrointestinal complaints, which she described in 2017, as bowel irregularity, diarrhea, and constipation. Initial testing performed in 2017 was mostly normal. An EGD and colonoscopy performed in August 2017 were normal (Exhibit 1F/4). A small bowel follow through performed that same

month was normal (Exhibit 1F/10). A gastric emptying study showed prolonged gastric emptying with a T1/2 of 509 minutes (Exhibit 1F/17). An ultrasound of [Plaintiff]'s abdomen and a HIDA scan performed in November 2017 were both normal (Exhibit 1F/18, 20). X-rays of [Plaintiff]'s abdomen performed in 2017 and 2018, showed a range of mild to moderate stool, but no other abnormalities (Exhibit 5F/2, 13, 14).

In October 2018, [Plaintiff] underwent a non-complicated laparoscopic pylroplasty (Exhibit 10F). Subsequently, she reported a significant improvement in her gastrointestinal symptoms. In January 2019, she was eating a variety of foods, going to the gym, and it was noted that she had an excellent response to surgery (Exhibit 12F/4). She subsequently reported her improvement from surgery lasted 3 months (Exhibit 13F).

In February 2020, two months after he alleged onset date, [Plaintiff] presented at the Cleveland Clinic, reporting a return in her gastrointestinal symptoms (Exhibit 13F). She was referred for testing, and it was noted that her workup was unremarkable (Exhibit 13F and 14F/1). She presented in June 2020 to establish with a new primary care physician, and it was noted that she was on Reglan, Compazine, and Zofran which helps "to an extent" (Exhibit 14F/1). Her abdominal was soft and non-tender, and she had positive bowel sounds (Exhibit 14F/2).

During the relevant time period, she presented to the emergency room in October 2019 and again in March 2021, due to an exacerbation in her gastrointestinal symptoms, but during both occasions, it was noted that she was out of her medications (Exhibit 19F/28, 42). Between those times (in July 2020), a transit study by smart pill showed normal gastric emptying (Exhibit 15F/40. In October 2020, [Plaintiff] reported that her gastrointestinal symptoms were "stable" (Exhibit 18F/36). Physical examinations performed during her emergency room visits showed abdominal tenderness, but were otherwise normal. A CT scan of [Plaintiff]'s abdomen performed during her March 2021 emergency room visit showed mild circumferential wall thickening of the distal ascending colon with minimal adjacent fat stranding, most compatible with infectious/inflammatory colitis; moderate stool with no obstruction; and minimal wall thickening of the urinary bladder with adjacent fat stranding suggestive of cystitis (Exhibit 19F/53). Laboratory studies performed in March 2021 were mostly normal, with the exception of elevated Calprotectin in the stool (Exhibit 20F/2). It was noted that such findings could be seen with NSAID use and many gastrointestinal infections and colorectal cancer (Exhibit 20F/2). However, no further screenings are found in the record, and [Plaintiff] did not testify as to any cancer diagnosis.

(R. at 23–24).

The ALJ summarized the medical records as to Plaintiff's migraines symptoms:

3

> [Plaintiff] also reports chronic migraines with pain behind her eyes. However, [an] MRI and a CT of her brain were normal (Exhibit 1F/22 and 19F/38). She presented for treatment with neurologist Dr. Ragoor recently, beginning in December 2020. She was started on MigraEeze, with a reported improvement of 3-5 migraines, to 1-2 migraines every two weeks (Exhibit 23F/5). A full and detailed neurological examination performed in April 2021 was entirely normal, showing [Plaintiff] to be alert, fully oriented, and well appearing, with intact concentration, intact memory, intact attention, normal 5/5 strength, no ataxia, normal coordination, a normal gait, and intact cranial nerves (Exhibit 23F/8). ***

(R. at 25).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2023 and has not engaged in substantial gainful activity since December 10, 2019, her alleged onset date of disability. (R. at 18). The ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease and degenerative joint disease of the lumbar spine, with mild scoliosis; left hip labral tear, status/post-surgical repair; gastroparesis; colitis; insomnia; migraines; major depressive disorder; and unspecific anxiety disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (*Id.*).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> [Plaintiff] has the residual functional capacity to light work as defined in 20 CFR 404.1567(b) except with the following limitations: no climbing; no more than frequent performance of other postural movements; and can understand, remember and carry out simple instructions that can be learned in one month or less.

(R. at 22).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record …" (R. at 23).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff

was unable to perform her past relevant work as a teller, waitress, composite job of receptionist, or data entry clerk. (R. at 27). Further, the ALJ decided that given Plaintiff's age, education, work experience and RFC, she was able to perform work that existed in significant numbers in the national economy, such as a storage facility rental clerk, office helper or a mail clerk. (R. at 27–28). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since December 10, 2019. (R. at 28).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.    DISCUSSION

In her Statement of Errors, Plaintiff contends that the ALJ erred in formulating Plaintiff's RFC by improperly evaluating the medical source opinion of treating Physician Assistant German Ortiz, PA-C.   Plaintiff also argues that the ALJ erred at Step 3 by failing to consider the combination of Plaintiff's severe impairments, including pain, and by not properly considering Plaintiff's migraine headaches in accordance with Social Security Ruling 19-4p.  (Docs. 9 and 11).

The Commissioner counters that the ALJ crafted an RFC that was supported by substantial evidence and split the difference between Mr. Ortiz's extreme assessment and that of the state agency reviewing physicians, who found no severe physical or mental impairments and thus no need for any work restrictions.  The Commissioner also counters that the ALJ also adequately discussed Plaintiff's migraine headaches according to the applicable rules and regulations, properly evaluated all of Plaintiff's conditions at step three, and determined that none of them met any Listing.   (Doc. 10).

### A.  Standard for Evaluating Medical Opinions

As an initial matter, the Court notes that the regulations governing an ALJ's evaluations of medical opinions changed on March 27, 2017, with the promulgation of 20 C.F.R. § 404.1520c. Accordingly, the Court will disregard Plaintiff's arguments on the treating source rule (Doc. 9 at 10–11), as that is not current law.   82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).   A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1) (2012).   A claimant's RFC assessment must be based on all the relevant evidence in his or her case file.  *Id*. *See also* 20 C.F.R. §§ 404.1513(a), 404.1520c.

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important, and the ALJ must explain how they were considered. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

Though an ALJ may discuss how he or she evaluated the other factors, it is not required. *Id.* If, however, an ALJ "find[s] that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ will] articulate how [he or she] considered the other most persuasive factors . . . . . " § 404.1520c(b)(3). Thus, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence, but to make sure the ALJ employed the proper legal standard by considering the factors and supported the conclusion with substantial evidence. *Id.* at *14.

### 1. The ALJ's Evaluation of Mr. Ortiz's Opinion

Plaintiff argues that the ALJ erred in formulating Plaintiff's RFC by improperly evaluating the medical source opinion of treating Physician Assistant German Ortiz, PA-C. (Doc. 9 at 10–15). Plaintiff says that, given Mr. Ortiz's Physical Medical Source Statement (R. at 517–20), it is unclear "how the ALJ determined that Plaintiff could engage in substantial gainful activity on a full-time and sustained basis." (Doc. 9 at 10). The Court finds this allegation of error without merit.

"At bottom, the role of the ALJ is to articulate how he considered medical opinions and

how persuasive he found the medical opinions to be." *Lorraine S. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2257, 2022 WL 17335383, at *5 (S.D. Ohio Nov. 30, 2022) (citing *Holston v. Saul*, No. 1:20-CV-1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021)). And the role of the Court is not to reweigh evidence but to ensure the ALJ employed the proper legal standard by considering the factors pursuant to 20 C.F.R. § 404.1520c(c)(1)–(5). *Id.*

Here, the ALJ determined that Plaintiff had the RFC to perform light work with additional limitations: "no climbing; no more than frequent performance of other postural movements; and can understand, remember and carry out simple instructions that can be learned in one month or less." (R. at 22). In coming to this determination, the ALJ considered medical and non-medical evidence, including Plaintiff's treatment history, her subjective complaints, her daily activities, and opinions from medical professionals. (*Id.* at 22–26). But the ALJ found the opinion of German Ortiz, P.A., "not persuasive," noting in relevant part:

> This source opined that [Plaintiff] was capable of only a range of sedentary work, with the ability to stand/walk for only 4 hours and the ability to lift 10 pounds occasionally, and that she would be absent from work three days per month. Such limitations are inconsistent with [Plaintiff]'s objective studies, which have been mostly mild in nature, as well as her physical examinations which have routinely shown intact strength and gait. Further, this opinion lacks adequate support, as Mr. Ortiz sets forth [Plaintiff]'s subjective symptoms and treatment, but does not cite to any specific treatment notes or objective studies in the record to support such significant limitations.

(R. at 26).

Plaintiff suggests that the ALJ's brief, two sentence explanation as to why Mr. Ortiz's statement is unpersuasive did not, minimally, create a logical bridge between the evidence and her conclusion. (Doc. 9 at 15). Indeed, the ALJ did not cite to any particular inconsistent medical records in her evaluation of Mr. Ortiz's statement. (R. at 26). "But an ALJ is not required to

repeat his analysis of the evidence in his evaluation of a medical opinion." *Lorraine S.*, No. 2:22-CV-2257, 2022 WL 17335383, at *7 (citing *Carlene C. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-245, 2022 WL 278168, at *5 (S.D. Ohio Jan. 31, 2022); *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)). And, in reading her decision as a whole, the ALJ adequately explained how both supportability and consistency were considered in her evaluation of Mr. Ortiz's medical opinion.

First, after extensively summarizing Plaintiff's subjective reports of symptoms, the objective medical tests performed from August 2017 to March 2021, and Plaintiff's treatment history for the same time period (R. at 22–26 (citing 34–71, 199–206, 210–17, 271, 277, 284–85, 287, 289, 380, 391–92, 432–37, 438–61, 497, 500–08, 549, 521–73, 602, 612, 616–17, 627, 632, 640, 692–726, 732, 735)), the ALJ concluded that the limitations suggested by Mr. Ortiz were "inconsistent with [Plaintiff's] objective studies, which have been mostly mild in nature, as well as her physical examinations[,] which have routinely shown intact strength and gait." (R. at 26). Most recently, Plaintiff's gastrointestinal issues had improved with medication and were "stable." (R. at 507, 560). And the ALJ noted that Plaintiff's musculoskeletal complaints diminished with physical therapy for her back pain and left hip surgery. (R. at 25 (citing R. at 526, 577, 632)).

And the ALJ did more. She noted that Plaintiff's migraines and mental health conditions were well managed. (R. at 25–26 (citing R. at 432–37, 693–726, 732, 735)). She considered Plaintiff's testimony and her daily activities. (R. at 26). In sum, the ALJ clearly considered the opinion's consistency with the entirety of the evidence and sufficiently explained her decision to enable review by the Court. Thus, the ALJ satisfied the regulations. *See* 20 C.F.R. § 404.1520c(b)(2).

Next, the ALJ determined that Mr. Ortiz's opinion lacked sufficient support.  (R. at 26).
This is because he provided no citations to Plaintiff's medical records or in-depth explanations for
the level of limitation included.  Mr. Ortiz's Statement included a one-page, approximately twelve-
line, handwritten summary of Plaintiff's diagnoses, symptoms, and treatments and three pages of
checkbox and circle responses.  (R. at 517–20).  Such conclusions without narrative explanations
are "weak evidence at best," *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir.
2016), and an ALJ is not bound by any conclusory statements from doctors, never mind statements
without objective support.  *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).  The Court
will not disturb the ALJ's RFC determination solely because a four-page subjective medical
statement—with no citations to objective medical records, only limited written responses to seven
(7) questions, and three pages of checked boxes and circle responses—suggested more restrictive
limitations were necessary.

In sum, the ALJ properly considered medical and non-medical evidence, including Mr.
Ortiz's medical opinion.  The ALJ's brief analysis of this opinion allowed the Court to conduct a
sufficient review of the decision because she built a logical bridge between the evidence and her
conclusion.  Fundamentally, Plaintiff disagrees with how the ALJ weighed the evidence.  But the
ALJ, not this Court, is charged with resolving conflicts in the medical evidence.  *King v. Heckler*,
742 F.2d 968, 974 (6th Cir. 1984).

**B.  Step 3**

Plaintiff also argues that the ALJ committed reversible error in failing to consider "the
appropriate listings at step three of the sequential evaluation and fail[ing] to consider that the
combination of Plaintiff's severe impairments, including pain and intestinal issues, precluded her
from engaging in substantial gainful activity on a full-time and sustained basis."  (Doc. 9 at 15).

At Step Three, the ALJ must compare a claimant's impairments to an enumerated list of medical conditions that the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). Plaintiff's impairment must meet every element of a Listing before the Commissioner may conclude that he is disabled at step three of the sequential evaluation process. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). It is insufficient to come close to meeting the conditions of a Listing. *Higgins v. Comm'r of Soc. Sec.*, No. 2:17-CV-1152, 2018 WL 5283940, at *4 (S.D. Ohio Oct. 24, 2018), *report and recommendation adopted*, No. 2:17-CV-1152, 2018 WL 6046319 (S.D. Ohio Nov. 19, 2018) (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989)).

It is Plaintiff's burden to provide sufficiently complete and detailed medical evidence to enable the Secretary to determine whether all a Listing's elements are met. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). "'Because satisfying the listings yields an automatic determination of disability ... the evidentiary standards [at step three] ... are more strenuous than for claims that proceed through the entire five-step evaluation.'" *Bianchetti v. Comm'r of Soc. Sec.*, No. 1:17-CV-155-SKL, 2018 WL 3873577, at *4 (E.D. Tenn. Aug. 15, 2018) (alterations in original) (quoting Peterson v. Comm'r of Soc. Sec., 552 F. App'x 533, 539 (6th Cir. 2014)).

Plaintiff argues that the ALJ erred in her Step Three analysis of migraine headaches and subsequent incorporation of this impairment into the RFC. (Doc. 9 at 15–23). Social Security Ruling (SSR) 19-4p governs an ALJ's consideration of headache disorders in the Sequential

Evaluation. SSR 19-4p, 2019 WL 4169635 (August 26, 2019).  At Step 3, SSR 19-4p indicates that a primary headache disorder is not a listed impairment. 2019 WL 4169635, at *7.  However, a listing is medically equaled if "a primary headache disorder, alone or in combination with other impairment(s), medically equals a listing." *Id.*  The SSR instructs that Listing 11.02 (paragraph B or D for dyscognitive seizures) is the "most closely analogous listed impairment" for an MDI of a primary headache disorder.  *Id.*  In pertinent part, this Listing describes:

> B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C). . . .
>
> *****
> D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
> 3. Interacting with others (see 11.00G3b(ii)); or
> 4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
> 5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. § Part 404, Subpt. P, App. 1, § 11.02.

In determining whether a primary headache disorder is equivalent to Listing 11.02B, the ALJ is required to consider:

> [a] detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7. To determine whether a primary headache disorder is equal in severity to Listing 11.02D, the ALJ should consider the 11.02B factors, as well as whether the overall effects of the primary headache disorder results in marked limitation of functioning in the five areas identified above. *Id.*

Here, the ALJ opined:

> The claimant also reports chronic migraines with pain behind her eyes. However, a MRI and a CT of her brain were normal (Exhibit 1F/22 and 19F/38). She presented for treatment with neurologist Dr. Ragoor recently, beginning in December 2020. She was started on MigraEeze, with a reported improvement of 3-5 migraines, to 1-2 migraines every two weeks (Exhibit 23F/5). A full and detailed neurological examination performed in April 2021 was entirely normal, showing the claimant to be alert, fully oriented, and well appearing, with intact concentration, intact memory, intact attention, normal 5/5 strength, no ataxia, normal coordination, a normal gait, and intact cranial nerves (Exhibit 23F/8). The claimant's migraines are fully accommodated by the limitation to light work. Given that the claimant has received improvement with conservative treatment and there is no evidence of any physical examination or imaging abnormalities, no further limitations are supported.

(R. at 25). Given that the finding of at least one severe impairment at step two is merely a threshold inquiry, *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007), the fact that the ALJ did not categorize Plaintiff's migraines as a severe impairment. The ALJ determined Plaintiff had satisfied the step two threshold inquiry and moved on with the analysis. And the ALJ subsequently analyzed all severe and non-severe impairments, including Plaintiff's migraines, in the RFC determination. In that RFC determination, the ALJ address the factors pursuant to SSR 19-4p. This is sufficient, especially since Plaintiff did not suggest—either in argument or in evidence— that her migraines were medically equal to a particular listing, or any listing for that matter. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986)

Lastly, the Court will briefly speak on Plaintiff's claim that the ALJ erred in not considering

the limiting effects of her pain.  An ALJ's symptom evaluation is entitled to "great weight and deference."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) (the ALJ's symptom testimony findings "'are virtually unchallengeable' absent compelling reasons"); *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) ("The scope of our review is limited to an examination of the record only.  We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.").  Here, the ALJ cited Plaintiff's testimony and subjective reports of pain in addition to objective diagnoses and treatments in her decision.  (R. at 18–26 (citing 34–71, 199–206, 210–17, 271, 277, 284–85, 287, 289, 380, 391–92, 432–37, 438–61, 497, 500–08, 549, 521–73, 602, 612, 616–17, 627, 632, 640, 692–726, 732, 735)).  The ALJ did not completely discount Plaintiff's reports of discomfort and pain but instead balanced her subjective complaints with the objective medical evidence in evaluating her symptoms.  The Court gives great deference to the ALJ's symptom evaluation, and, here, she has done enough.

## IV.     CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.

Date:   February 10, 2023                                   /s/ Kimberly A. Jolson
                                                           KIMBERLY A. JOLSON
                                                           UNITED STATES MAGISTRATE JUDGE